**Fill in t is in orma i n t iden ify you cas :**

Debto 1 Jason Dale Hall
First Name M ddle Name L st Name

Debto 2 Jessica Rose Hall
(Sp use, if filin ) First Name M ddle Name L st Name

United States Bankruptcy Cou t fo the: Northern District of Texas

C se numbe 24-42072
(If kn wn)

# Official Form 42

## Cover Sheet for Reaffirmation Agreement

12/15

**Anyone who is a pa ty to a rea firma i n ag eemen may fill ou and file this fo m. Fill it ou comple ely, a tach it to t e rea firma i n ag eemen , and file the documen s within t e time s t unde Bank up cy Rule 4008.**

**Part 1: Explain the Repayment Terms of the Reaffirmation Agreement**

1. **Who is the c edito ?** Mahindra Finance USA LLC
N e of the credito

2. **How much is the deb ?** n the d te th t the b nkruptcy c se is filed $28,112.32
T be p id unde the re ffirmation a reement $28,112.32
$450.97 pe month fo 63 months (if fixed inte est rate)

3. **Wha is the Annual P c n age Ra e (APR) of in er s ? ( ee Bank up cy Code § 524(k)(3)(E).)**
Befo e the b nkruptcy c se was filed 7.94 %
Unde the re ffirmation a reement 7.94 % ☑ Fixed rate ☐ Adjustable rate

4. **Does colla e al s cu e the d b ?**
☐ No
☑ Yes. Des ribe the c llate al. Mahindra Tractor & Implements
Cu rent ma ket v lue $

5. **Does the c edito ass rt tha deb is n ndischa geable?**
☑ No
☐ Yes. Atta h an explan tion of the n tu e of the debt and the b sis fo c ntendin th t the debt is n ndis h rge ble.

6. **Using in orma i n from *Schedule I: Your Income* ( 106I) and *Schedule J: Your E penses* ( fficial Fo m 106J), fill in t e amoun s.**

| Income and expens s repo ted on Schedules I and J | | Income and expens s s a ed on t e rea firma i n ag eemen | |
|---|---|---|---|
| 6 . Combined monthly in ome from line 1 of Schedule I | $ 8230.60 | 6e. Monthly in ome from all s u ces afte p yr l dedu tions | $ 8230.60 |
| 6b. Monthly expenses from line 2 c of S hedule J | – $ 8135.00 | 6 . Monthly expenses | – $ 8135.00 |
| 6 . Monthly p yments on all re ed debts n t listed on S hedule J | – $ 0.00 | 6 . Monthly p yments on all re ed debts n t in luded in monthly expenses | – $ 0.00 |
| 6d. **Scheduled ne mon hly income** Subtra t lines 6b and 6 from 6 . I the total is less th n 0, put the numbe in b ackets. | $ 95.60 | 6h. **P es n ne mon hly income** Subtra t lines 6f and 6 from 6e. I the total is less th n 0, put the numbe in b ackets. | $ 95.60 |

ebtor 1 Jason Dale Hall (First Name, Middle Name, Last Name)    Case number (*if known*) 24-42072

| | | |
|---|---|---|
| 7. **Are the income amounts on lines 6a and 6e different?** | ☑ No<br>☐ Yes. | Explain why they are different and complete line 10.________________ |
| 8. **Are the expense amounts on lines 6b and 6f different?** | ☑ No<br>☐ Yes. | Explain why they are different and complete line 10.________________ |
| 9. **Is the net monthly income in line 6h less than 0?** | ☑ No<br>☐ Yes. | A presumption of hardship arises (unless the creditor is a credit union).<br>Explain how the debtor will make monthly payments on the reaffirmed debt and pay other living expenses.<br>Complete line 10.________________ |
| 10. **Debtor's certification about lines 7-9**<br>If any answer on lines 7-9 is *Yes*, the debtor must sign here.<br>If all the answers on lines 7-9 are *No*, go to line 11. | | I certify that each explanation on lines 7-9 is true and correct.<br>✘ ________________ Signature of Debtor 1<br>✘ ________________ Signature of Debtor 2 (Spouse Only in a Joint Case) |
| 11. **Did an attorney represent the debtor in negotiating the reaffirmation agreement?** | ☐ No<br>☑ Yes. | Has the attorney executed a declaration or an affidavit to support the reaffirmation agreement?<br>☐ No<br>☑ Yes |

## Part 2: Sign Here

**Whoever fills out this form must sign here.**

**I certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties identified on this *Cover Sheet for Reaffirmation Agreement*.**

✘ /s/ Sebrina Searl
Signature

Date 09/27/2024
MM / DD / YYYY

Sebrina Searl
Printed Name

Check one:

☐ Debtor or Debtor's Attorney
☑ Creditor or Creditor's Attorney

Form 2400A (12/15)

Check one.
☐ **Presumption of Undue Hardship**
☑ **No Presumption of Undue Hardship**
*See Debtor's Statement in Support of Reaffirmation, Part II below, to determine which box to check.*

# UNITED STATES BANKRUPTCY COURT

Northern District of Texas

In re Jason Dale Hall, *Debtor*

Case No. 24-42072

Chapter 7

## REAFFIRMATION DOCUMENTS

**Name of Creditor:** Mahindra Finance USA LLC

☐ Check this box if Creditor is a Credit Union

## PART I. REAFFIRMATION AGREEMENT

**Reaffirming a debt is a serious financial decision. Before entering into this Reaffirmation Agreement, you must review the important disclosures, instructions, and definitions found in Part V of this form.**

A. Brief description of the original agreement being reaffirmed: Equipment Loan
*For example, auto loan*

B. ***AMOUNT REAFFIRMED***: $ 28,112.32

The Amount Reaffirmed is the entire amount that you are agreeing to pay. This may include unpaid principal, interest, and fees and costs (if any) arising on or before 06/17/2024, which is the date of the Disclosure Statement portion of this form (Part V).

*See the definition of "Amount Reaffirmed" in Part V, Section C below.*

C. The ***ANNUAL PERCENTAGE RATE*** applicable to the Amount Reaffirmed is 7.9400 %.

*See definition of "Annual Percentage Rate" in Part V, Section C below.*

This is a *(check one)* ☑ Fixed rate ☐ Variable rate

If the loan has a variable rate, the future interest rate may increase or decrease from the Annual Percentage Rate disclosed here.

D. Reaffirmation Agreement Repayment Terms *(check and complete one)*:

☐ $________ per month for ________ months starting on____________.

☑ Describe repayment terms, including whether future payment amount(s) may be different from the initial payment amount.
-1 Payment of $152.18 due on 3/15/2024
-62 Payments of $450.97 due starting on 4/15/2024

E. Describe the collateral, if any, securing the debt:

Description: Mahindra Tractor & Implements
Current Market Value $____________________________

F. Did the debt that is being reaffirmed arise from the purchase of the collateral described above?

☑ Yes. What was the purchase price for the collateral? $ 37,960.00

☐ No. What was the amount of the original loan? $___________________

G. Specify the changes made by this Reaffirmation Agreement to the most recent credit terms on the reaffirmed debt and any related agreement:

| | Terms as of the Date of Bankruptcy | Terms After Reaffirmation |
|---|---|---|
| Balance due *(including fees and costs)* | $ 28,112.32 | $ 28,112.32 |
| Annual Percentage Rate | 7.9400 % | 7.9400 % |
| Monthly Payment | $ 450.97 | $ 450.97 |

H. ☐ Check this box if the creditor is agreeing to provide you with additional future credit in connection with this Reaffirmation Agreement. Describe the credit limit, the Annual Percentage Rate that applies to future credit and any other terms on future purchases and advances using such credit:

## PART II. DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

A. Were you represented by an attorney during the course of negotiating this agreement?

Check one. ☑ Yes ☐ No

B. Is the creditor a credit union?

Check one. ☐ Yes ☑ No

C. If your answer to EITHER question A. or B. above is "No," complete 1. and 2. below.

1. Your present monthly income and expenses are:

a. Monthly income from all sources after payroll deductions (take-home pay plus any other income) $ 8230.60

b. Monthly expenses (including all reaffirmed debts except this one) $ 7684.03

c. Amount available to pay this reaffirmed debt (subtract b. from a.) $ 546.57

d. Amount of monthly payment required for this reaffirmed debt $ 450.97

*If the monthly payment on this reaffirmed debt (line d.)* ***is greater than*** *the amount you have available to pay this reaffirmed debt (line c.), you must check the box at the top of page one that says "Presumption of Undue Hardship." Otherwise, you must check the box at the top of page one that says "No Presumption of Undue Hardship."*

2. You believe that this reaffirmation agreement will not impose an undue hardship on you or your dependents because:

Check one of the two statements below, if applicable:

☑ You can afford to make the payments on the reaffirmed debt because your monthly income is greater than your monthly expenses even after you include in your expenses the monthly payments on all debts you are reaffirming, including this one.

☐ You can afford to make the payments on the reaffirmed debt even though your monthly income is less than your monthly expenses after you include in your expenses the monthly payments on all debts you are reaffirming, including this one, because:

Use an additional page if needed for a full explanation.

D. If your answers to BOTH questions A. and B. above were "Yes," check the following statement, if applicable:

☐ You believe this Reaffirmation Agreement is in your financial interest and you can afford to make the payments on the reaffirmed debt.

*Also, check the box at the top of page one that says "No Presumption of Undue Hardship."*

## PART III. CERTIFICATION BY DEBTOR(S) AND SIGNATURES OF PARTIES

I hereby certify that:

(1) I agree to reaffirm the debt described above.

(2) Before signing this Reaffirmation Agreement, I read the terms disclosed in this Reaffirmation Agreement (Part I) and the Disclosure Statement, Instructions and Definitions included in Part V below;

(3) The Debtor's Statement in Support of Reaffirmation Agreement (Part II above) is true and complete;

(4) I am entering into this agreement voluntarily and am fully informed of my rights and responsibilities; and

(5) I have received a copy of this completed and signed Reaffirmation Documents form.

SIGNATURE(S) (If this is a joint Reaffirmation Agreement, both debtors must sign.):

Date 9/18/24 Signature J Hall
*Debtor*

Date 9/18/24 Signature Jessica Hall
*Joint Debtor, if any*

**Reaffirmation Agreement Terms Accepted by Creditor:**

Creditor Mahindra Finance USA LLC — PO Box 2000, Johnston, IA 50131
*Print Name* — *Address*

Sebrina Searl — /s/ Sebrina Searl — 09/27/2024
*Print Name of Representative* — *Signature* — *Date*

## PART IV. CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY)

*To be filed only if the attorney represented the debtor during the course of negotiating this agreement.*

I hereby certify that: (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☐ A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

*Check box, if the presumption of undue hardship box is checked on page 1 and the creditor is not a Credit Union.*

Date 9/24/2024 Signature of Debtor's Attorney [signature]

Print Name of Debtor's Attorney Eric A. Mendell

## PART V. DISCLOSURE STATEMENT AND INSTRUCTIONS TO DEBTOR(S)

**Before agreeing to reaffirm a debt, review the terms disclosed in the Reaffirmation Agreement (Part I above) and these additional important disclosures and instructions.**

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps, which are detailed in the Instructions provided in Part V, Section B below, are not completed, the Reaffirmation Agreement is not effective, even though you have signed it.

### A. DISCLOSURE STATEMENT

1. **What are your obligations if you reaffirm a debt?** A reaffirmed debt remains your personal legal obligation to pay. Your reaffirmed debt is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Your obligations will be determined by the Reaffirmation Agreement, which may have changed the terms of the original agreement. If you are reaffirming an open end credit agreement, that agreement or applicable law may permit the creditor to change the terms of that agreement in the future under certain conditions.

2. **Are you required to enter into a reaffirmation agreement by any law?** No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments that you agree to make.

3. **What if your creditor has a security interest or lien?** Your bankruptcy discharge does not eliminate any lien on your property. A ''lien'' is often referred to as a security interest, deed of trust, mortgage, or security deed. The property subject to a lien is often referred to as collateral. Even if you do not reaffirm and your personal liability on the debt is discharged, your creditor may still have a right under the lien to take the collateral if you do not pay or default on the debt. If the collateral is personal property that is exempt or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the current value of the collateral, as the parties agree or the court determines.

4. **How soon do you need to enter into and file a reaffirmation agreement?** If you decide to enter into a reaffirmation agreement, you must do so before you receive your discharge. After you have entered into a reaffirmation agreement and all parts of this form that require a signature have been signed, either you or the creditor should file it as soon as possible. The signed agreement must be filed with the court no later than 60 days after the first date set for the meeting of creditors, so that the court will have time to schedule a hearing to approve the agreement if approval is required. However, the court may extend the time for filing, even after the 60-day period has ended.

5. **Can you cancel the agreement?** You may rescind (cancel) your Reaffirmation Agreement at any time before the bankruptcy court enters your discharge, or during the 60-day period that begins on the date your Reaffirmation Agreement is filed with the court, whichever occurs later. To rescind (cancel) your Reaffirmation Agreement, you must notify the creditor that your Reaffirmation Agreement is rescinded (or canceled). Remember that you can rescind the agreement, even if the court approves it, as long as you rescind within the time allowed.

6. **When will this Reaffirmation Agreement be effective?**

a. **If you *were* represented by an attorney during the negotiation of your Reaffirmation Agreement and**

i. **if the creditor is not a Credit Union**, your Reaffirmation Agreement becomes effective when it is filed with the court unless the reaffirmation is presumed to be an undue hardship. If the Reaffirmation Agreement is presumed to be an undue hardship, the court must review it and may set a hearing to determine whether you have rebutted the presumption of undue hardship.

ii. **if the creditor is a Credit Union**, your Reaffirmation Agreement becomes effective when it is filed with the court.

b. **If you *were not* represented by an attorney during the negotiation of your Reaffirmation Agreement**, the Reaffirmation Agreement will not be effective unless the court approves it. To have the court approve your agreement, you must file a motion. See Instruction 5, below. The court will notify you and the creditor of the hearing on your Reaffirmation Agreement. You must attend this hearing, at which time the judge will review your Reaffirmation Agreement. If the judge decides that the Reaffirmation Agreement is in your best interest, the agreement will be approved and will become effective. However, if your Reaffirmation Agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home, you do not need to file a motion or get court approval of your Reaffirmation Agreement.

7. **What if you have questions about what a creditor can do?** If you have questions about reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement. If you do not have an attorney helping you, you may ask the judge to explain the effect of this agreement to you at the hearing to approve the Reaffirmation Agreement. When this disclosure refers to what a creditor “may” do, it is not giving any creditor permission to do anything. The word “may” is used to tell you what might occur if the law permits the creditor to take the action.

## B. INSTRUCTIONS

1. Review these Disclosures and carefully consider your decision to reaffirm. If you want to reaffirm, review and complete the information contained in the Reaffirmation Agreement (Part I above). If your case is a joint case, both spouses must sign the agreement if both are reaffirming the debt.

2. Complete the Debtor’s Statement in Support of Reaffirmation Agreement (Part II above). Be sure that you can afford to make the payments that you are agreeing to make and that you have received a copy of the Disclosure Statement and a completed and signed Reaffirmation Agreement.

3. If you were represented by an attorney during the negotiation of your Reaffirmation Agreement, your attorney must sign and date the Certification By Debtor’s Attorney (Part IV above).

4. You or your creditor must file with the court the original of this Reaffirmation Documents packet and a completed Reaffirmation Agreement Cover Sheet (Official Bankruptcy Form 427).

5. *If you are not represented by an attorney, you must also complete and file with the court a separate document entitled “Motion for Court Approval of Reaffirmation Agreement” unless your Reaffirmation Agreement is for a consumer debt secured by a lien on your real property, such as your home.* You can use Form 2400B to do this.

## C. DEFINITIONS

1. **"Amount Reaffirmed"** means the total amount of debt that you are agreeing to pay (reaffirm) by entering into this agreement. The total amount of debt includes any unpaid fees and costs that you are agreeing to pay that arose on or before the date of disclosure, which is the date specified in the Reaffirmation Agreement (Part I, Section B above). Your credit agreement may obligate you to pay additional amounts that arise after the date of this disclosure. You should consult your credit agreement to determine whether you are obligated to pay additional amounts that may arise after the date of this disclosure.

2. **"Annual Percentage Rate"** means the interest rate on a loan expressed under the rules required by federal law. The annual percentage rate (as opposed to the "stated interest rate") tells you the full cost of your credit including many of the creditor's fees and charges. You will find the annual percentage rate for your original agreement on the disclosure statement that was given to you when the loan papers were signed or on the monthly statements sent to you for an open end credit account such as a credit card.

3. "**Credit Union"** means a financial institution as defined in 12 U.S.C. § 461(b)(1)(A)(iv). It is owned and controlled by and provides financial services to its members and typically uses words like "Credit Union" or initials like "C.U." or "F.C.U." in its name.

# RETAIL INSTALMENT CONTRACT AND SECURITY AGREEMENT (Agricultural and Commercial Use)

MAHINDRA FINANCE USA LLC ("Assignee")

Case ID: [redacted]

| | | | | | | |
|---|---|---|---|---|---|---|
| BUYER | CONTRACT NUMBER | | | SELLER | DEALER CODE | 013500.E600 |
| | NAME | JASON HALL | | | CONTRACT DATE | 05/12/2022 |
| | ADDRESS | 103 TUSK CT | | | NAME | NORTH TEXAS EQUIPMENT |
| | CITY & STATE | WEATHERFORD, TX | | | CITY & STATE | SAGINAW, TX |
| | ZIP CODE | 76085-9414 | TELEPHONE NO. [redacted] | | ZIP CODE | 76179 |
| | | EMAIL ADDRESS | | | | |

| PAYMENT SCHEDULE – EQUAL INSTALMENTS: | | | | IRREGULAR INSTALMENTS: | PAY INSTALMENTS TO: |
|---|---|---|---|---|---|
| Monthly ☑ | Quarterly ☐ | Semiannual ☐ | Annual ☐ | Irregular instalments are due as follows: | MAHINDRA FINANCE USA LLC<br>P.O. Box 77114<br>Minneapolis, MN 55480-7702 |
| Number of Payments | Amount of Each Payment | | First Payment Date | | |
| 84 | $450.97 | | 06/15/2022 | | |

**DESCRIPTION OF PURCHASED MACHINERY/COLLATERAL:** *Note:* Machinery described below (the "Machinery") as "New" does not necessarily mean the Machinery was manufactured in the current year.

| NEW/ USED | MAKE AND MODEL NUMBER | SERIAL NUMBER | DESCRIBE PROPERTY PURCHASED | CASH PRICE |
|---|---|---|---|---|
| | SEE EQUIPMENT ADDENDUM | | | |

**DESCRIPTION OF TRADE-IN MACHINERY:** Except as otherwise disclosed below, Buyer represents and warrants that trade-in property is free and clear of all security agreements, liens and encumbrances.

| MAKE AND MODEL NUMBER | SERIAL NUMBER | TRADE-IN ALLOWANCE | LESS OWING | NET TRADE-IN |
|---|---|---|---|---|
| SEE EQUIPMENT ADDENDUM | | | | |

## ANALYSIS OF SALE

| | | |
|---|---|---|
| Cash Price | 1. | $37,960.00 |
| Sales Taxes | 2. | $79.72 |
| **Total Cash Price (1+2)** | 3. | $38,039.72 |
| Cash Down Payment | 4. | $10,000.00 |
| Net Trade-In | 5. | $0.00 |
| **Total Down Payment (4+5)** | 6. | $10,000.00 |
| **Unpaid Balance of Total Cash Price (3-6)** | 7. | $28,039.72 |
| Other Charges: | | |
| a. Physical Damage Insurance | 8. | $0.00 |
| b. Filing Fees | 9. | $5.00 |
| c. Administration Fee | 10. | $550.00 |
| d. Other (describe: MAKE READY / SET UP) | 11. | $395.00 |
| **Total Other Charges (8+9+10+11)** | 12. | $950.00 |
| **Amount Financed** (Basic Time Price) **(7+12)** | 13. | $28,989.72 |
| **Finance Charge** (Time-Price Differential) | 14. | $8,891.76 |
| **Total of Payments** (Time-Price Balance) **(13+14)** | 15. | $37,881.48 |
| **Total Credit Sale Price (3+12+14)** | 16. | $47,881.48 |
| **Deferred Finance Charge Rate** | 17. | 7.94% |

**Pursuant to the terms of this contract (this "Contract"), the undersigned Buyer (if more than one, jointly and severally), having been quoted a Time Price and a lower Cash Price, hereby purchases the property described above (the "Machinery") from the undersigned Seller for the Total Credit Sale Price indicated in the Analysis of Sale, subject to the terms and conditions hereunder and on the pages that follow and promises to make the Total of Payments as set forth above.**

## PERSONAL GUARANTY

This space left intentionally blank

## ADDITIONAL TERMS AND CONDITIONS

**Precomputed Contract.** This is a precomputed contract. This means that the Total of Payments is computed in advance assuming all payments are made when due. The Total of Payments is comprised of the Amount Financed and the Deferred Finance Charge. The Deferred Finance Charge is also determined in advance assuming an initial annual interest rate of 7.94% beginning on 05/15/2022.

**Administration Fee.** Buyer agrees to pay a fee of $550.00. Buyer understands that Assignee is paid $150.00 of the fee and Seller retains the rest and that Assignee and Seller may make a profit on this fee.

**Late Payments and Dishonored Payments.** Each instalment past due more than 10 days shall be subject to a late charge accrued at an interest rate equal to 1.75% per month from the due date until paid or $1, whichever is greater. In the event any check or other form of payment made by Buyer is returned for any reason, Buyer agrees to pay Seller the lesser of $30 or the maximum amount permitted by law. Such amount shall, as specified by Seller, be paid on demand or be added to the Total of Payments payable hereunder and Buyer promises to pay the resulting increase in the instalments. In no event shall amounts chargeable hereunder exceed the maximum amount permitted under applicable law.

**No Prepayment Penalty.** Buyer may prepay this Contract in whole or in part at any time without penalty.

**Insurance.** Buyer ☐ does or ☑ does not elect to obtain physical damage insurance for the Machinery through a group policy arranged by Assignee. By signing below, Buyer acknowledges having read the accompanying Customer Agreement to Provide Physical Damage Insurance, Buyer understands the terms contained therein and represents that information contained therein related to Buyer is true and correct.

**Following assignment of this Contract, all references to "Seller" in this Contract shall be deemed references to "Assignee." Buyer acknowledges that Seller is not the agent of Assignee, that any representations or warranties made by Seller are not binding on Assignee, and that Seller does not have the authority to modify any term or provision of this Contract subsequent to assignment of this Contract by Seller.**

**NOTICE TO BUYER**

1. DO NOT SIGN THIS CONTRACT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES. YOU ARE ENTITLED TO AN EXACT COMPLETELY FILLED IN COPY OF THIS CONTRACT WHEN YOU SIGN IT. KEEP IT TO PROTECT YOUR LEGAL RIGHTS.
2. UNDER THE LAW, YOU HAVE THE FOLLOWING RIGHTS, AMONG OTHERS: (A) TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE AND TO OBTAIN A PARTIAL REFUND OF THE FINANCE CHARGE; (B) TO REDEEM THE PROPERTY IF REPOSSESSED FOR A DEFAULT WITHIN THE TIME PROVIDED BY LAW; (C) TO REQUIRE, UNDER CERTAIN CONDITIONS, A RESALE OF THE PROPERTY IF REPOSSESSED.
3. BUYER ACKNOWLEDGES HAVING READ THE ENTIRE CONTRACT(INCLUDING THE ADDITIONAL TERMS AND CONDITIONS CONTAINED ON PAGE 2) AND ACKNOWLEDGES RECEIPT OF A TRUE COPY AT THE TIME OF ITS EXECUTION.

| BUYER | | SELLER | | |
|---|---|---|---|---|
| JASON HALL | | NORTH TEXAS EQUIPMENT | | |
| DocuSigned by: [signature] 79429F141BA147B... | | [signature] | | |
| Signature | | Signature | | |
| JASON HALL | 5/13/2022 | Bryan Webb | Pres | 5/13/22 |
| Print Name | Date | Print Name | Title | Date |

## ADDITIONAL TERMS AND CONDITIONS

**1. Delivery and Acceptance:** Buyer acknowledges receipt of the Machinery in good order and condition and, to the extent permitted by applicable law, waives any and all rights Buyer may have to rescind this Contract, reject the Machinery or revoke acceptance of the Machinery.

**2. Disclaimer of Warranties: (Except Residents of Kansas): BUYER AGREES TO ACCEPT THE MACHINERY IN ITS AS-IS, WHERE-IS CONDITION WHEN DELIVERED AND ACKNOWLEDGES THAT NO WARRANTY, EITHER EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION THE IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, IS PROVIDED BY SELLER OR ASSIGNEE TO BE APPLICABLE TO THIS CONTRACT OR THE MACHINERY. ANY ACTION FOR BREACH OF WARRANTY MUST BE COMMENCED WITHIN THIRTEEN (13) MONTHS FOLLOWING DELIVERY.**

**3. Grant of Security Interest under the Uniform Commercial Code.** In order to secure payment of the indebtedness contained herein and for all other amounts due or to become due hereunder and for each and every other obligation now or hereafter owing by Buyer to Seller and/or Assignee, the undersigned Buyer hereby grants to Seller a security interest in the Machinery, including the proceeds thereof, together with all repairs, replacements and accessions now or thereafter appertaining thereto until all indebtedness is paid in full.

**4. Assignment; Acknowledgements of Buyer:** Buyer may not assign this Contract without Seller's prior written consent. No assignment or extension hereof or of any interest herein, or loss, injury or destruction of Machinery shall release Buyer from its obligations hereunder. Seller may assign this Contract in whole or in part and Assignee shall succeed to all Seller's rights hereunder, but shall have none of Seller's obligations. Buyer's obligation to pay directly to Assignee any amounts payable hereunder is absolute and unconditional under all circumstances and is not subject to any abatement, reduction, setoff, recoupment, claim, defense or counterclaim of any kind or for any reason whatsoever, all of which are hereby expressly waived by Buyer as against Assignee. Buyer shall not assert against Assignee any claim, defense, setoff, reduction, dispute, recoupment or counterclaim of any kind or for any reason whatsoever which Buyer may have against Seller or manufacturer of the property. **IN NO CASE SHALL SELLER OR ASSIGNEE BE LIABLE FOR ANY SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES BASED UPON ANY LEGAL THEORY, INCLUDING, BUT NOT LIMITED TO, LOSS OF PROFITS, LOSS OF USE OF THE MACHINERY, THE CLAIMS OF THIRD PARTIES AND INJURY TO THE MACHINERY.** Buyer further acknowledges each of the following (a) Assignee is not the manufacturer of the Machinery or the manufacturer's agent or a dealer therein; (b) the Machinery is of a size, design, capacity, description and manufacturer selected by Buyer; (c) Buyer is satisfied that the Machinery is fit for Buyer's purposes; (d) Assignee has no knowledge or information regarding the condition or suitability of the Machinery for Buyer's purposes; and (e) Assignee has relied upon Buyer's warranties, agreements and covenants herein.

**5. Representations, Warranties and Covenants:** Buyer represents, warrants and covenants that: (a) the trade-in property, if any, is free and clear of all security agreements, liens and encumbrances; (b) if Buyer is a legal entity, it is duly organized, validly existing and in good standing under applicable law; (c) this Contract is a legal, valid and binding obligation of Buyer and is enforceable against Buyer in accordance with the terms thereof and does not violate or create a default under any other instrument or agreement to which Buyer is a party; (d) there are no pending or threatened actions or proceedings before any court of administrative agency that could have a material adverse effect on Buyer, the Machinery, or this Contract; (e) Buyer will comply in all respects with all Federal, state and local laws and regulations the violation of which could have a material adverse effect upon the Machinery or Buyer's performance of its obligations under this Contract; (f) Buyer will provide to Seller such other information and documents as Seller may reasonably request;(g) **the Machinery is purchased for agricultural or commercial purposes and not for personal, family or household purposes;** and (h) all of the Machinery is tangible personal property and will not be attached or affixed to real property in any manner. Buyer's representations, warranties and covenants shall survive termination of this Contract and Buyer agrees to indemnify and hold Seller and/or Assignee harmless from all claims, damages, losses and expenses, including reasonable attorneys' fees, resulting from breach of any of the foregoing.

**6. Use, Location and Maintenance of Machinery:** Buyer shall keep the Machinery free of all liens, taxes, encumbrances and seizure or levy. Buyer shall not use the Machinery illegally or damage, abuse, misuse, abandon or lose the Machinery. Buyer shall not sell, lease, rent, abandon, transfer, or otherwise dispose of any interest in the Machinery and shall not move it outside of the contiguous 48 states of the United States. Buyer shall notify Seller of each change in the place where the Machinery is located or used and of any change in the state of Buyer's location (as such term is defined in the Uniform Commercial Code) not more than 20 days following each change in location. Seller may, at any time before or after default, enter any premises under Buyer's control to inspect the Machinery.

**7. Insurance:** Buyer shall purchase and maintain, at Buyer's expense, standard all-risk type property damage insurance for the actual cash value of the Machinery with a maximum deductible equal to the greater of $500.00 or five percent (5.0%) of the adjusted loss in a form and from an insurer satisfactory to Seller and shall keep such insurance in effect until full payment of this Contract. Such insurance shall provide Seller with 10 days advance notice of cancellation and name Seller as a loss payee through a Lender's Loss Payable Clause. Buyer hereby irrevocably appoints Seller and Assignee as Buyer's attorney-in-fact (which power shall be deemed coupled with an interest) to make claim for, receive payment of, and execute and endorse all documents, checks or drafts received in payment for loss or damage under any such insurance policy and to settle and adjust all claims under any such policy. If Buyer fails to deliver evidence of such a paid-up policy or to furnish other evidence of insurance satisfactory to Seller within 15 days of the date of this Contract or should such insurance be canceled or allowed to lapse before full payment of this Contract, it is understood that Seller may, but shall not be obligated to, purchase or otherwise provide such insurance, in which case Buyer shall reimburse Seller for the cost thereof, together with interest thereon at the Deferred Finance Charge Rate from the date such insurance was purchased or provided by Seller until paid. Such reimbursement amount and the interest thereon shall, as specified by Seller, either be paid on demand or be added to the Total of Payments, and Buyer promises to pay the resulting increase in the payments. Except as may otherwise be separately agreed, neither Seller nor Assignee shall have any responsibility to Buyer for the cost or appropriateness of the premium for any insurance, the creditworthiness of any insurance company, the rebate or refund of any insurance premium to which Buyer may be entitled or any other matter relating to any insurance even if any insurance was provided through a group policy arranged by Assignee or any insurance premium was financed and included in the Analysis of Sale. In no event shall any interest charge under this Contract exceed the maximum amount allowed by law. Buyer acknowledges that Seller and/or Assignee may make a profit on insurance purchased by Seller or Assignee. **There is no insurance coverage for personal liability or property damage caused to others.**

**8. Default; Remedies:** Each of the following is a "Default" under this Contract: (a) Buyer fails to make any Payment or any other obligation when due under this Contract or in any other agreement with Seller, Assignee, or with any of their affiliates or related parties; (b) Seller deems itself insecure; (c) any representation or warranty made by Buyer proves to be incorrect in any material respect when made; (d) Buyer becomes insolvent, is generally unable to pay its debts when due, dissolves, assigns its assets for the benefit of its creditors, or becomes the subject of a bankruptcy, receivership, or insolvency proceeding; (e) Buyer sells all or substantially all of its assets or property; or (f) Buyer shall suffer a material adverse change in its financial condition or operations. In the event of a Default or an event which, with the passage of time, would constitute a Default hereunder, Seller, at its option, may: (a) terminate this Contract; and/or (b) retain all payments heretofore made by Buyer and declare all indebtedness hereunder, less unearned finance charges, immediately due and payable and Seller shall have all the rights and remedies of a Secured Party under the Uniform Commercial Code and may, with or without notice, enter any premises where the Machinery may be and take possession thereof and remove the same, together with replacements and accessories, or Seller may require Buyer to assemble the property and make it available at a place designated by Seller. In the event Seller seeks to take possession of any or all of the Machinery by court process, Buyer further irrevocably waives to the fullest extent permitted by law any bonds and any surety or security relating thereto required by any statute, court rule or otherwise as an incident to such possession and said retaking shall not be deemed rescission of this Contract. Further, Buyer confesses judgment for purposes of executory process and waives all notices and delays. Seller may resell retaken property at public or private sale with notice to Buyer and the proceeds of any such sale (less reasonable expenses of retaking, repairing, holding, preparing for sale, selling and the like including reasonable attorney's fees and legal expenses) shall be credited upon the amount unpaid. Subject to the limitations of state law, Buyer agrees to pay any deficiency upon demand by Seller, any surplus however, shall be paid to Buyer. Seller may accept partial payments of any sums due herein without waiving or otherwise modifying the terms of this Contract. Waiver by Seller of any Default shall not be deemed a waiver of any other Default. Buyer agrees to pay all collection and repossession costs, reasonable attorneys' fees, legal expenses and court costs incurred in connection with any Default.

**9. Governing Law; Severability; Waiver of Jury Trial:** The law of the state of Buyer's address shown on the first page hereof shall govern all matters relating to the validity, effect and enforcement of this Contract. Any provision hereof invalid in any state shall be inoperative as to such state, but without invalidating the remaining provisions hereof. **Buyer expressly waives its right to a trial by jury.**

**10. UCC Filings:** Buyer authorizes Seller to file, at Buyer's expense, financing statements with respect to the Machinery and hereby ratifies and approves any financing statement filed prior to the date of this Contract. Buyer hereby appoints Seller (which Seller may act by or through Assignee or Assignee's servicer) as Buyer's attorney-in-fact to do all acts or things which Seller may deem necessary to protect the title and interest hereunder of Seller and Assignee. This power of attorney is coupled with an interest and is irrevocable. If the Machinery is subject to any certificate of title act, Buyer shall immediately apply for/obtain certificate(s) of title and registration for each item of property being purchased; each certificate shall include listing of a lien in the amount of the Total Credit Sale Price listed in the "Analysis of Sale" on page one; the name of the lienholder shall be Assignee or such other person as Seller shall direct in writing; and Buyer shall provide Seller with evidence of the continuing effectiveness of such lien as may be reasonably requested from time to time. In addition, Buyer shall deliver or cause to be delivered to Seller the original certificate(s) of title for each item of such property. In Florida only, Florida documentary stamp tax required by law in the amount of $0.00 has been paid or will be paid directly to the Department of Revenue. Certificate of Registration No. (MAH) 78-8015673276-6.

**11. No Modification; Insertion of Serial Numbers and Model Numbers and Corrections of Errors and Information:** No modification or addition to this Contract shall be effective unless agreed upon in writing by the parties. Notwithstanding the foregoing, Buyer authorizes Seller to insert in this Contract the serial number and/or model numbers of the Machinery if unknown at the time this Contract is executed, correct any errors in such numbers reflected in this Contract at the time this Contract is executed and correct any other patent errors in the description of the Machinery reflected in this Contract at the time this Contract is executed; to fill in blanks existing in this Contract at the time this Contract is executed; and to correct any patent errors in this Contract.

**12. Financial and Credit Information; Communication with Buyer:** Buyer authorizes Seller to obtain credit bureau reports and make other credit inquiries that Seller determines are necessary, without notice to Buyer, to update its information so long as the undersigned has any outstanding indebtedness or obligations owed to Seller or Assignee. Buyer further agrees to provide Seller, promptly after request therefore by Seller, such income statements, balance sheets and other financial statements and information and such federal and state income tax returns concerning Buyer that Seller determines are necessary. Buyer providing its email address and/or telephone number in this Contract or otherwise is Buyer's acknowledgment that Seller may retain Buyer's email address and/or telephone number for further communication with Buyer. Buyer agrees to allow Seller to conduct business with Buyer using email or by calling Buyer, regardless of the purpose of Seller's communication, which may include, without limitation, collections and notices under Buyer's agreements with Seller and/or Assignee. Seller reserves the right to use the method of communication it deems best in interacting with Buyer.

**13. Application of Payments; Processing Fee.** Payments received may be applied at Seller's discretion to obligations hereunder or to any other indebtedness owed by Buyer to Seller despite directions, if any, appearing on the remittance, and to late charges first and then to the amount owing. If Buyer requests to make or authorize a payment via phone, electronically or similarly through Seller, unless otherwise prohibited under applicable law, Buyer agrees to pay all third party expenses associated with processing the payment and a $10 processing fee to Seller, on which Seller may make a profit.

**14. Prepayment Refund.** Buyer may prepay the full amount of the debt at any time. In the event of prepayment, Buyer may be entitled to a refund of certain unearned finance charges. Unless applicable law requires otherwise, the refund, if any, will be calculated using the actuarial method and Seller will: (a) assume that the debt was paid before the date of prepayment according to the disclosed schedule of payments and that all payments were paid on their due dates; and (b) exclude any administration or origination fee from the refund calculation. If a refund is less than $5.00, no refund will be made to Buyer.

**15. Counterparts; Facsimile and Electronic Copies:** This Contract may be executed and accepted by Seller in any number of counterparts, including facsimile or electronic mail counterparts. Buyer agrees that a copy of this Contract bearing a signature of Buyer which was transmitted by facsimile or printed from an electronic file shall be admissible in any legal proceeding as evidence of its contents and its execution by the parties in the same manner as an original document. Buyer further agrees to not object to the admissibility of a copy of this Contract bearing a signature of Buyer into evidence under the business records exception to the hearsay rule or based on the best evidence rule or otherwise and expressly waives any right to do so. Notwithstanding the fact that this Contract may be executed in more than one counterpart, the sole execution original of this Contract for purposes of taking possession of this Contract, including without limitation taking possession under UCC 9-330, shall be either: (a) the original of this Contract which bears an original signature of each party to this Contract and which bears the original signature of Assignee accepting the assignment of this Contract or (b) the facsimile, electronic or other counterpart copy of this Contract signed by the parties and bearing the original signature of Assignee accepting the assignment of this Contract, unless this Contract qualifies as electronic chattel paper, in which case UCC 9-105 shall govern to determine control of the single authoritative copy of the Contract.

**RETAIL INSTALLMENT CONTRACT AND SECURITY AGREEMENT** (Agricultural and Commercial Use)

MAHINDRA FINANCE USA LLC ("Assignee")

Case ID: [redacted]

**SELLER'S ASSIGNMENT**

For value received, Seller hereby sells, assigns, and transfers to MAHINDRA FINANCE USA LLC ("Assignee"), all of Seller's right, title, and interest in and to the within Contract and all rights thereunder, together with all Seller's right, title and interest in and to the Machinery therein described, subject to the terms more fully set out in Seller's Retail Financing Agreement or the terms of a separate assignment between Seller and Assignee, such assignment to be accepted by Assignee only at its office in Johnston, Iowa.

| Date | Seller's Name | | Authorized Signature |
|---|---|---|---|
| 5/13/22 | NORTH TEXAS EQUIPMENT | By: | [signature] |

**ASSIGNEE ACCEPTANCE**

Assignee hereby accepts Seller's assignment of the within Contract in Johnston, Iowa.

| Date | | | Authorized Signature |
|---|---|---|---|
| | MAHINDRA FINANCE USA LLC | By: | |

DocuSign Envelope ID: 5CD5E76F-8883-4248-B6AA-B45140FB41B2

# Equipment/Trade-In Addendum

| NEW/USED | Purchased Equipment Description (Include make and model) | Serial Number | Describe Property Purchased | Price $ |
|---|---|---|---|---|
| NEW | 2022 Mahindra 4540 4WD | | Tractor | 28,492.00 |
| NEW | 2022 Mahindra 4550L | | Loader | 5,488.00 |
| NEW | 2022 Mahindra KRCSD7240SP | | ROTARY CUTTER 6FT SD SP | 2,490.00 |
| NEW | 2022 Mahindra KBSSD6 | | SD Box Scraper 6 | 1,490.00 |

Buyer, by signing below, represents and warrants:

1. It has reviewed and acknowledges and agrees that the information in the table(s) above is accurate and complete;
2. Except as described above, any trade-in property is free and clear of all security agreements, liens and encumbrances;
3. If any trade-in property is listed above, Buyer hereby trades-in and transfers all of its right, title and interest in and to the trade-in equipment described above.

A facsimile or electronic signature of this addendum may be treated as an original.

| BUYER | | SELLER | |
|---|---|---|---|
| JASON HALL | DocuSigned by: [signature] 76409F141BA447B... | NORTH TEXAS EQUIPMENT | [signature] |
| Signature | | Signature | |
| Print Name: JASON HALL | Title: | Date: 5/13/2022 | Print Name: Bryan Welch | Date: 5/13/22 |

**UCC FINANCING STATEMENT**

**FOLLOW INSTRUCTIONS**

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
CSC

**B. E-MAIL CONTACT AT FILER (optional)**

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**
Corporation Service Company
251 LITTLE FALLS DRIVE
Wilmington, DE 19808
USA

**FILING NUMBER:** 22-0024785282
**FILING DATE:** 05/17/2022 04:43 AM
**DOCUMENT NUMBER:** 1149254640001
**FILED: Texas Secretary of State**
**IMAGE GENERATED ELECTRONICALLY FOR XML FILING**
**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. DEBTOR'S NAME - Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | | |
|---|---|---|---|---|---|
| OR | 1a. ORGANIZATION'S NAME | | | | |
| | 1b. INDIVIDUAL'S SURNAME<br>**HALL** | FIRST PERSONAL NAME<br>**JASON** | ADDITIONAL NAME(S)/INITIAL(S)<br>**DALE** | | SUFFIX |
| 1c. MAILING ADDRESS<br>**103 TUSK CT** | | CITY<br>**WEATHERFORD** | STATE<br>**TX** | POSTAL CODE<br>**76085** | COUNTRY<br>**USA** |

2. DEBTOR'S NAME - Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | | |
|---|---|---|---|---|---|
| OR | 2a. ORGANIZATION'S NAME | | | | |
| | 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY) - Provide only one Secured Party name (3a or 3b)

| | | | | | |
|---|---|---|---|---|---|
| OR | 3a. ORGANIZATION'S NAME<br>**Mahindra Finance USA LLC** | | | | |
| | 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS<br>**P.O. Box 2000** | | CITY<br>**Johnston** | STATE<br>**IA** | POSTAL CODE<br>**50131** | COUNTRY<br>**USA** |

4. COLLATERAL: This financing statement covers the following collateral:
MAHINDRA MAD 4540 4WD TRACTOR MAHINDRA MAD 4550L LOADER MAHINDRA MAD KRCSD7240SP ROTARY CUTTER 6FT SD SP MAHINDRA MAD KBSSD6 SD BOX SCRAPER 6

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box.
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
[232214023]

**FILING OFFICE COPY**